IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6211-HURLEY/VITUNAC

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NIZAR FNEICHE, | ) |
| | ) |
| Defendant, | ) |



### RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL AND ALTERNATIVE MOTION FOR NEW TRIAL AND MEMORANDUM OF LAW IN SUPPORT THEREOF

NOW COMES the Defendant, NIZAR FNEICHE, by and through his attorney, THE LAW OFFICES OF TIM BIASIELLO, in renewal of his Motion for Judgment of Acquittal pursuant to Rule 29, and his alternative Rule 33 Motion for New Trial, as supported by his Memorandum of Law, and furtherance thereof, he states as follows:

1. The indictment was constructively amended in violation of the Fifth Amendment by the instruction given to the trial jury allowing for conviction should the jury find that the defendant knew or should have known of the manufacture of 'any' controlled substance.

2. The timing of the Instruction resulted in the deprivation of the rights afforded the defendant by Sixth Amendment to the Constitution to full confrontation and a fair trial.

3. The failure to instruct the jury as to the definition of controlled substance left the jury free to speculate as to an essential element of the charged offense.

1

4. The instruction referred to in paragraph one broadened the indictment in violation of the Fifth Amendment by allowing the jury to convict upon speculation that any illegality associated with the pseudoephedrine was a basis of conviction.

5. The evidence with respect to Count 11 was insufficient to prove the defendant guilty beyond a reasonable doubt.

6. The jury verdict of guilty to the charge of possession in Count 11 was legally inconsistent with the verdict of not guilty in Count 1, and should be set aside as a matter of law

7. In accordance with the Court's prior rulings, the defendant adopts the motions of his co-defendants, unless this defendant specifically opts out of any arguments presented therein.

## MEMORANDUM OF LAW
## IN SUPPORT OF POST TRIAL MOTION

### INTRODUCTION

During its second day of deliberation, the trial court jury presented the Court with a most striking inquiry in the form of a written note, which stated as follows:

"RE: Charge 11

Reasonable Cause to believe standard vs. state proving its case

*Did a defendant have to have knowledge or reasonable cause to believe the pseudoephedrine would be used to make specifically methamphetamine to be guilty??"

Significantly, this query came after the jury had heard twenty plus days of trial testimony, during which the government presented an extensive litany of witnesses, most of whom presented evidence of activities associated with the distribution of pseudoephedrine directed to the ultimate manufacture of methamphetamine (not a controlled substance generally, but methamphetamine

2

specifically). The poignancy of the question manifests in commanding fashion the jury's careful analysis and scrutiny of Count 11 of the superseding indictment which charged that the defendants did knowingly and intentionally possess and distribute pseudoephedrine knowing, or having reason to believe, that it would be used to manufacture "a controlled substance, that is methamphetamine."

Recognizing that the question was intensely significant, the answer to which was likely to be most compelling upon the jury's ultimate verdicts, the Court sought the assistance of counsel and the benefit of guidance from applicable case law.

The following morning, the parties asserted their respective positions. Not surprisingly, the government contended that the precise identity of the controlled substance was not required by the statute, and that the jury was therefor free to convict if it found that a defendant knew, or had reason to believe that 'any' controlled substance would be manufactured. The defendants each contended that the form of the indictment had made methamphetamine an essential element of the charge. Further, the defendants each argued that an instruction which broadened the bases of conviction beyond that charged in the indictment, so as to include not just methamphetamine but also 'any controlled substance', would constitute a constructive amendment of the indictment and per se reversible error.

After hearing argument from all parties, the Court, citing legal precedent, including *United States v. Restropo-Granda*, 575 F.2d 524 (5thCir. 1978) and *United States v. Cain*, 130 F.3d 381 (9th Cir. 1997), decided to essentially instruct the jury that, in any count, if it found beyond a reasonable doubt, that a defendant knew, or had reason to know, that the pseudoephedrine was to be used to manufacture 'any' controlled substance, such was sufficient to convict.

This defendant respectfully suggests that this instruction sealed the fate of Nizar Fneiche.

## CONSTRUCTIVE AMENDMENT

The defendant respectfully suggests that the instruction was in error and constituted a constructive amendment of the indictment.

An amendment occurs when the charging terms of an indictment are altered. It is well settled law that a jury instruction which constructively amends an indictment is per se reversible error because it violates the constitutional right to be tried only upon the charges which have been presented in the grand jury indictment. Such amendment is violative of the Fifth Amendment provisions because it creates the possibility that a defendant may have been convicted of an offense on grounds not alleged in the indictment. *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *United States v. Lignarolo*, 770 F.2d 971 (11th Cir., 1985); *United States v. Peel*, 837 F.2d 975 (11th Cir 1988); *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985).

## MANNER OF CHARGING OFFENSE IN GRAND JURY INDICTMENT CAN MAKE NON STATUTORY ELEMENT ESSENTIAL TO THE OFFENSE CHARGED

The identity of the particular controlled substance the pseudoephedrine would be used to manufacture was not a statutory element of the offenses pursuant to Title 21 United States Code 21, Section 841(d)(2). However, the government made the identity of the particular controlled substance, that is, methamphetamine, a necessary element of the indictment as a result of the way it chose to frame its charging document.[1]

---

[1] Count I alleges: "From in or about September 1999, the exact date being unknown to the Grand Jury, to on or about July 29, 2000, in Broward County in the Southern District of Florida, and elsewhere, the defendants......did knowingly and intentionally combine, confederate and agree with each other and with persons known and unknown to the Grand Jury, to possess and distribute

4

"What becomes essential to a charged offense in a particular case, that is, above and beyond what is necessary as a statutory matter–depends upon the structure of the indictment, and is thus completely within the government's control." *United States v. Willoughby*, 27 F.3d 263 (7th Cir.1994). The courts have repeatedly held that the use of this phrase "to wit" is an expression of limitation which makes what follows an essential part of the charged offense. *United States v. Goines*, 988 F.2d 750, (7th Cir.1993) *cert. denied,* U.S. , 114 S.Ct. 241, 126 L.Ed.2d 195 (1993); *United States v. Leichtnam*, 948 F.2d 370 (7thCir.1991). The use of the phrase "that is" is the equivalent of the phrase "to wit". *Black's Law Dictionary*, p. 1498 (7th Ed.). Having specifically identified the controlled substance, the government made methamphetamine an essential element of proof.

In *United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir. 1994), an indictment charged a defendant with the use of a firearm "during and in relation to a drug trafficking crime, *to wit, the distribution of cocaine....(emphasis added)."* The court specifically found that the use of the phrase "to wit" was an expression of limitation, and ruled that the language following the phrase had been converted into a necessary element of the indictment.

---

pseudoephedrine, a List I chemical as defined in Title 21, United States Code, Section 802 knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance, *that is, methamphetamine*, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(d)(2); all in violation of Title 21, United States Code, Section 846. (*Emphasis added*)

      Count II alleges: "On or about June 1, 2000, at Broward County, in the Southern District of Florida, *and elsewhere*, the defendants..........did knowingly and intentionally possess and distribute pseudoephedrine, a List I chemical as defined in Title 21, United States Code, Section 802, knowing and having reasonable cause to believe that the lsited chemical would be used to manufacture a controlled substance, *that is, methamphetamine*, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(d)(2), and Title 18, United States Code, Section 2. (*Emphasis added*)

5

*United States v. Weissman*, 899 F.2d 1111, 1115 (11th Cir.1990) is an example of the significance of this phrase. In *Weissman*, a RICO conspiracy indictment charged a particular defendant with being "associated with an enterprise, to wit, a group of individuals associated in fact, known as the DeCavalcante Family of La Cosa Nostra." Rather than using the general language of the statute in the charging document, the Government chose to specifically identify the particular enterprise. During the course of its deliberation, the jury requested clarification as to whether the Government must prove that the enterprise to which the defendant was associated was the specific 'DeCavalcante' enterprise, or generally, any enterprise. In reliance upon the terms of the statute, the trial court responded with an instruction which essentially provided that the Government need not prove that the specific 'DeCavalcante' family was the enterprise, it need only prove that the defendant was associated with 'an' enterprise. The defendant was then convicted of the charge.

The Eleventh Circuit reversed the conviction focusing upon the Government's use of "to wit" in framing its indictment. The Court found that by choosing <u>not</u> to rely on the general language of the statute, it made proof of the defendant's association with the enterprise particularly identified in the indictment an essential element of the offense charged. The instruction was therefor deemed to be a constructive amendment of the Indictment and a Fifth Amendment violation.

In *United States v. Salinas*, 601 F.2d 1080 (5th Cir.1979), the Court addressed an instruction which the appellant contended 'broadened' the terms of an indictment beyond that which was specifically charged. The indictment charged the defendant with a violation of 18 U.S.C. 656. Under this section, an essential element of the crime is that the defendant was an 'officer', 'director', 'agent', or, 'employee' of a bank. Although the Government could have framed the indictment to charge the defendant with acting in any one of those capacities, the Government instead chose to limit the

indictment by specifically charging the defendant with being a 'director.' Responding to a query from the jury, the trial court nonetheless instructed that the Government needed to prove only that the defendant fit 'any' of the statutory categories, not just the specific 'director' status charged in the indictment. The Fifth Circuit reasoned that the Government chose to narrow the indictment by charging only the specific status as director, and thus deemed the court's instruction to be a constructive amendment of the indictment and per se reversible error.

In *Thomas v. Harrelson*, 942 F.2d 1530 (11th Cir. 1991), a defendant was charged with the mens rea of 'extreme indifference' to human life in a murder indictment. The trial court instructed the jury on intentional murder in addition to the charged reckless murder. The Eleventh Circuit deemed such instruction to be a constructive amendment of the indictment, and per se reversible error.[2]

In *United States v. Keller*, 916 F.2d 628 (11th Cir. 1990), the Court found that the essential elements of the indictment were altered and unconstitutionally broadened when the court instructed the jury that it was sufficient for them to find that the defendant conspired with 'some other person', although the indictment specifically alleged that the defendant conspired only with 'Smith'. The court reasoned that the indictment contained no general language indicating that there were unnamed, or unknown conspirators, and it ruled that the government had made proof of an agreement with 'Smith' an essential element of the indictment.

---

[2]Interestingly, the Eleventh Circuit further recognized the Sixth Amendment implications of instructions given to the jury after the testimony has been taken:

> "A Sixth Amendment violation based upon the accused's right to be informed of the nature and the cause of the accusation against him cannot be swept away by an instruction given to the jury after the testimony phase of the trial is over." 942 F.2d at 1537.

In *United States v. Floresca*, 38 F.3d 706 (4th Cir. 1994), a defendant was charged with witness tampering in violation of 18 U.S.C., Section 1512(b)(1) by attempting to prevent a witness from cooperating with the government's investigation. The trial judge instructed the jury that it could return a guilty verdict if it found that the defendant had approached the witness with the intent to affect either his cooperation in the investigation or in his testimony at trial. The *Floresca* court ruled that the instruction to the jury was a constructive amendment because it broadened the bases for the defendant's conviction. This constituted per se reversible error. In so ruling, the court stated:

> "We stress that it is the broadening itself that is important–nothing more. It matters not, if a constructive amendment has occurred, whether the factfinder could have concluded (as it surely could have based on reasonable inferences arising from Lopez's testimony) that Floresca intended to influence both the investigation and his trial. Though this is a case of first impression in this circuit, all of our sister circuits have consistently interpreted *Stirone*[3] ..to mean that a constructive amendment of the indictment constitutes error <u>per se.</u> Plainly and simply, "*<u>a court cannot permit a defendant to be tried on charges that are not made in the indictment against him</u>*." quoting *Stirone*, 360 U.S. at 217, 80 S.Ct. At 273   (*Emphasis added*)

Again in *United States v. Cancelliere*, 69 F.3d 1116 (11th Cir. 1995), a trial court conviction was reversed because of a jury instruction which was deemed to have constructively amended an indictment. In *Cancelliere*, the government sought, and received, a jury instruction which redacted an allegation of willfullness in a money laundering case. The government contended that although this particular mens rea was included within the indictment, willfulness was not a statutory element of money laundering, and therefore, it was unnecessary surplusage. The Eleventh Circuit disagreed, citing a number of factors including the fact that the government chose to include this language in its

---

[3] *United States v. Stirone*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960)

indictment, the indictment was published to the trial jury, and the defendant based his trial strategy on the inclusion of that allegation in the indictment. The court reasoned that the redaction of that element after the close of evidence was, in effect, an alteration of the charge, and an "impermissible broadening of the bases upon which the jury could convict...similar to that in *United States v. Leichtnam*, 948 F.2d 370 (7th Cir. 1991)." 69 F.3d at 1121.

In *Leichtnam*, the grand jury specifically alleged that the defendant "did knowingly use and carry a firearm, to wit: a Mossberg rifle, Model 250CA with no serial number, during and in relation to...drug trafficking." 948 F.2d at 374. Trial evidence included the introduction of the rifle as alleged, as well as the introduction of two separate handguns which were not delineated in the indictment. The trial court instructed the jury that the conviction could rest upon proof that the defendant carried a 'firearm', whether or not it was the particular Mossberg rifle alleged in the indictment.

On appeal, the defendant alleged that the trial court's instruction was a constructive amendment of the indictment. The Seventh Circuit agreed. In doing so, the Court recognized that the government had the opportunity to charge the defendant generally with having used or carried a 'firearm', but noted that the government had chosen instead to specifically charge the particular weapon. The *Leichtnam* court found that the inclusion of the specifically identified weapon in the indictment made that particular weapon an essential element of the crime charged, and found that the language "was not mere surplusage....as a matter of law." 948 F.2d at 379.

## FIFTH AMENDMENT RIGHT TO BE TRIED ONLY ON SPECIFIC CHARGE CONTAINED IN INDICTMENT EXTENDS TO THE SPECIFIC CONTROLLED SUBSTANCE ALLEGED IN A DRUG OFFENSE INDICTMENT

In responding to the jury query, the court seemed to have deemed narcotics cases to be insulated from the applicability of the above indicated line of precedent. To the extent that this may be true, the defendant respectfully calls this court's attention to *United States v. Wozniak*, 126 F.3d 105 (2nd Cir. 1997).

The defendant in *Wozniak* was charged with violations of 12 U.S.C. 841(a)(1) in an indictment which specifically alleged the possession and distribution of cocaine and methamphetamine. The trial evidence included evidence suggesting that the defendant had used, possessed, and distributed large amounts of marijuana.

At the conclusion of the trial, the government submitted a proposed jury instruction in which it contended that the precise controlled substance was not an element of the offenses charged. The trial court agreed, and gave the following instruction, which provided, in pertinent part as follows:

> "[I]t does not matter that a specific count of the indictment charges that a specific controlled substance was involved in that count, and the evidence indicates that, in fact, a different controlled substance was involved.
>
> So long as you are satisfied that the government has proven beyond a reasonable doubt that some controlled substance was involved in the acts charged in that count of the indictment, it does not matter if such controlled substance is different than that alleged in that count of the indictment."

On appeal, the Second Circuit reviewed this instruction and determined that the inclusion of language allowing for conviction based upon evidence of a controlled substance different from the

10

controlled substance specifically alleged in the indictment was a broadening of the charge, and a constructive amendment of the indictment.

In so ruling, the Court ratified the applicability in a narcotics case of the well established principle that a non statutory element (i.e. the identity of a controlled substance) can be made an essential element of an indictment if it is specifically alleged. The indictment charged methamphetamine and cocaine. The Court ruled that proof of possession and distribution of marijuana could not stand as proof of that charge.

In reversing the conviction, the Court rejected the applicability of its earlier decision in *United States v. Knuckles*, 581 F.2d 305 (2d Cir. 1978) *cert. denied*, 439 U.S. 986, 99 C.Ct. 581, 58 L.Ed.2d 659 (1978), distinguishing 'courier', or 'mule' circumstance [4] from that of a defendant alleged to be a member of a large scale narcotics distribution scheme, involving multiple participants, whose activities extended over a protracted period, at diverse times and places.

THE INSTRUCTION FAILED
TO SPECIFICALLY DEFINE THE
OFFENSE CHARGED AND ALLOWED
THE JURY TO SPECULATE AS TO
THE ILLEGALITY ALLEGED IN COUNT 11

Having instructed the jury as indicated above, the Court did not specifically define the element 'controlled substance'. Accordingly, the jury was left to speculate as to the necessary elements of the charge.

---

[4] As in *United States v. Restrepo-Granda*, 575 F.2d 524 (5th Cir. 1978) (defendant carrying concealed controlled substance at border stop); *United States v. Gonzalez*, 700 F.2d 196 (5th Cir. 1983)(defendant asked to drive truck with concealed controlled substance) ; and *United States v. Cain*, 130 F.3d 381 (9th Cir. 1997)(defendant drives vehicle with concealed controlled substance).

During the course of the proceedings, the jury heard testimony regarding the defendant's notice of illegality associated with the pseudoephedrine, not associated with the manufacture of methamphetamine, or the manufacture of any controlled substance. This included evidence that the pseudoephedrine was being repackaged for export to the Middle East for purpose of avoiding taxes. In addition, as early as the initial stages of voir dire, the prospective jury members were advised that pseudoephedrine was included within a category of List I chemicals.

The defendant respectfully asserts that the failure to define 'controlled' 'substance' left the jury free to speculate as to the statutory definition of 'controlled'.

For example, did the jury believe that the element of 'control' extended to the regulatory oversight of some official United States or foreign, governmental customs agency, a United States or foreign governmental tax agency, or some other regulatory agency? Having been advised of an obvious statutory classification of certain substances into List I chemicals, did the jury believe that any such List I chemical was 'controlled' by the federal law, and thus a 'controlled' substance?

In light of the consistent government argument of 'consciousness of guilt', the failure to specifically define controlled substance substantially prejudiced the defendant and it was violative of the rights afforded the defendant by the Fifth and Sixth Amendments.

## THE INSTRUCTION GIVEN AT THE CLOSE OF THE EVIDENCE DEPRIVED THE DEFENDANT OF HIS SIXTH AMENDMENT RIGHTS

The government's theory of prosecution, including the specificity of the charge, the overwhelming operative facts of the manufacture of methamphetamine, and the government's consistent argument gave the defendant reason to base his trial strategy upon his disassociation with

specifically methamphetamine. This trial strategy extended to decisions as to the nature and scope of cross examination, decisions as to the introduction of evidence, as well as the decision whether to testify.

During the course of trial, the government introduced evidence and consistent argument of a 'consciousness of guilt' (i.e. alleged countersurveillance, false exculpatory declarations etc.). Had the defendant anticipated a more broadened charge ('any' controlled substance), the defendant's trial strategy would have necessarily been broadened to address the alternative theory of illegality. Having been placed on notice of what was perceived as a 'consciousness of guilt' limited to the foreseeability of methamphetamine manufacture (the 'core criminality'), the defendant was inducted to formulate a response specifically limited, and directed to the manufacture of methamphetamine.

As a consequence of the timing of the alteration of the charge, that is, after the close of the evidence, and after the right to cross examine had long passed, the defendant was induced to refrain from fully exercising his right of confrontation and to introduce evidence in his behalf. Thus, he was deprived of the exercise of the rights afforded him by the Sixth Amendment to the Constitution of the United States.

## THE TRIAL EVIDENCE FAILED TO PROVE THE NECESSARY ELEMENT OF DISTRIBUTION BY THE DEFENDANT IN COUNT 11

Count 11 of the indictment charged that defendant did knowingly "possess" and knowingly "distribute" pseudoephedrine, a List I chemical...in violation of Title 21, United States Code, Section 841(d)(2) and Title 18 United States Code, Section 2.

While trial evidence may have established the defendant's participation in the packaging process, there was no evidence of his having participated in any distribution of pseudoephedrine.

The act of packaging is not the act of distribution. "'[D]istribution relates to different conduct than does 'possession with intent to distribute'...packaging drugs for later distribution is not distribution.." *United States v. Willoughby*, 27 F.3d 263, 267 (7th Cir. 1994).

In viewing the evidence on a sufficiency of the evidence argument, the court is compelled to consider the evidence in a light most favorable to the government with all reasonable inferences and credibility choices made in the government's favor. *United States v. Rosenthal*, 793 F.2d 1214 (11th Cir. 1986). However, the record is devoid of any evidence of the defendant having engaged in the distribution of the pseudoephedrine. Having made distribution an element of Count 11, the government was charged with that duty, and it failed. Accordingly, the evidence was insufficient to prove the defendant guilty of the Count.

## CONCLUSION

For all of the above stated reasons, the Defendant respectfully requests that this Honorable Court enter a Judgment of Acquittal on Count 11 pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or in the alternative, grant the Defendant a new trial on Count 11 pursuant to Rule 33 of the Federal Rules of Criminal Procedure, and for such other relief as may right and just.

LAW OFFICES OF TIM BIASIELLO
Attorney for Defendant NIZAR FNEICHE
33 North Dearborn Street
Suite 1015
Chicago, Illinois 60602
312-853-0343

Respectfully submitted,

*/s/ signature*

Attorney for Defendant